The oral argument is McKim v. Williamson County Ambulance and Heron Hospital. Counsel, whenever you're ready, you may proceed. Okay, please report. Counsel. My name is Karen Johns and I'm here on behalf of the defendant, Southern Illinois Hospital Services, DVA Heron Hospital. This case involves the adjudication of liens before the trial court. In this case, there was a settlement of $16,000 and the plaintiff identified lien holders. In fact, he identified five different lien holders that were claiming money from the state. They identified costs and proposed a settlement or an adjudication order to the trial court. The trial court adjudicated the liens held by – the trial court determined that all of the lien holders should be included in the calculation of the 40% allocated under the Health Care Services Lien Act and further held that the costs were to be borne only by Heron Hospital and Williamson County Ambulance, who were the two entities that held liens under the Health Care Services Lien Act. And we are appealing that decision. There are two main issues in this case. First of all, Your Honor, the question is whether the other entities holding liens under other statutory provisions, such as Medicare, subrogation claims, and public aid, Illinois Department of Health Care and Family Services, are to be included in the 40% allocation under the Health Care Services Lien Act. The trial court ordered that they were to be included, and it is our position that the plain language of the Health Care Services Lien Act does not provide for lien holders other than those holding liens under that act to be included in that 40% allocation. Under the act, the only individuals entitled to share in that 40% are health care professionals and health care providers. The Medicare for Medicaid public aid, their liens are created by either the Medicare Secondary Payer Act or the Illinois Public Aid Act, not the Health Care Services Lien Act. And the act also does not include subrogation liens in that 40% allocation. Section 23-10 of the Health Care Services Lien Act states, the amount of all liens under this act shall not exceed 40% of the verdict, judgment, award, settlement, or compromise. The act then goes forward and uses the same language always referring to the liens held under this act to identify who is entitled, which are the health care service providers and health care professionals, which are defined in the act as those who have liens under the act, and allows for those two categories of lien holders to share the 40%, equally 20%, and 20%. There's also provisions in the act that provides that if one group doesn't have enough just to basically exhaust the 20% of the settlement that's allocated to them, that that amount can be shifted, but no category can receive more than one-third. So this legislature has set forth in great detail not only who is allowed to collect or participate under that and collect from that 40%, but the manner in which they are to share in that 40%. Subrogation claims are not included in that 40% allocation. There is a provision now of this Health Care Services Lien Act, Section 50, that provides for or allows the court to adjudicate those subrogation claims. But it is not, they do not, when the Section 50 was enacted by the General Assembly, they did not amend Section 10 to allow subrogation claimants to share in the 40%. And Section 50 does not create a lien under the act. And as I indicated previously, Section 23-10 clearly states that only those holding liens under this act are entitled to share in that 40%. Specifically, Section 50 provides that if a subrogation claim or other kind of reimbursement claim that arises out of the payment of medical expenses or other benefits exists with respect to a claim for personal injury debt. So all it does is recognize that if you have a private insurance carrier that has a subrogation claim or some sort of contractual statutory claim, subrogation claim, this statute allows the plaintiff to seek a reduction of that claim. But it does not provide that they are to share in the 40%. As a result, it's our position that the language of the statute, which must be given its plain and ordinary meaning, clearly provides that only Heron Hospital in this case and Williamson County Ambulance Service, the two entities that hold liens pursuant to In this case, because they are both health care providers, they would be limited to one-third. And the court should have adjudicated the liens to allow a total amount that can be recovered by these two lien holders to be $5,333.33. And then after you consider divided by each program of share, Heron Hospital should have received, $4,218.66, and Williamson County should receive $1,114.67. The second thing that the trial court did was they, the court ordered that all the costs were to be borne of the litigation were to be borne by Heron Hospital and Williamson County Ambulance Service. That decision, of course, is in direct conflict with two, three Supreme Court decisions, Maynard, Wendland, and McVeigh. In Maynard and Wendland, the Supreme Court held that the common fund doctrine did not apply to liens held pursuant to the Health Care Services Lien Act, and the lien holders under that act could not be required to pay a program share of attorney's fees or costs. Now, since the appellee has conceded that or withdrawn that, what is your position that you want us to take? Well, my position, Your Honor, is it still, the court, this court still needs to enter a decision in order with regards to that because the trial court has held that the costs are to be borne by the lien holders, and so that order needs to be corrected. As it stands now, the trial court order indicates that the lien holders, specifically Heron Hospital and Williamson County Ambulance Service, are required to pay the costs. So that decision has to be reversed. They've conceded it, but this court should issue an order reversing the trial court on that point in order that they re-adjudicate the liens appropriately pursuant to the Health Care Services Lien Act. The issue then becomes how, and I think the issue that has arisen is how, when you have liens that are covered by the Health Care Services Lien Act and ones that are not, how does the settlement get adjudicated and how does it get distributed? In this case, we have five different lien holders of subrogation claimants and four different statutory provisions which are applicable to those lien holders of subrogation claimants. Medicare, covered under the Medicare Secondary Care Act, Illinois Department of Health Care and Family Services, which is covered by the Illinois Public Aid Code, SIH and Williamson County Ambulance, covered by the Health Care Services Lien Act, the attorney who's covered by the Attorney Lien Act and the Health Care Services Lien Act, and then there's a lien held by an insurance company by the name of HealthSpring Health and Life Insurance Company. There's a dispute as to what type of lien that is. A claimant asserts that it's a Medicare Part D lien, and if it is a Medicare Part D lien, then it is covered by the Medicare Secondary Care Act and would have, and the court would not have authority to adjudicate it the same way that they're not allowed to adjudicate a Medicare lien, the Illinois State Courts. If, however, it's our position that the documents and the evidence that was submitted to the trial court, however, does not establish it as a Medicare Part D. The lien wasn't asserted by a CMS or Medicare. It was asserted by a private health insurance company, and as a result, it's nothing more than a subrogation claim. And that is relevant not only to the issue as to whether the court has authority to adjudicate it, but also in the priority of liens. It's our position in order to adjudicate liens and distribute settlement proceeds where there are multiple liens held under various statutory provisions, it's essentially a three-step process. The court must first determine whether it has authority to adjudicate the liens, and if so, adjudicate them pursuant to the individual statutory provision that applies to that particular lien. Medicare, you can adjudicate, but the Illinois Department of Public Health Care Family Services lien has to be adjudicated under the provisions of the Illinois Public Aid Code. The Health Care Services Lien Act, those liens have to be adjudicated under the Health Care Services Lien Act. Subrogation claims under the Health Care Services Lien Act. Attorneys under the Attorney Lien and Health Care Services Lien Act. After those adjudications, individual statutory provisions on each lien is looked at in that manner, then the court must determine the priority of the lien holders in the order of their priority with the remaining amount going to the plaintiff. And the trial court in this case did not properly adjudicate the liens under each of the relevant statutory provisions, and they did not determine the priority of liens, so they didn't properly distribute the settlement proceeds. As I indicated, the Medicare lien cannot be adjudicated by the trial court, the Illinois State Court. There's an administrative procedure for that, and only the federal courts can't adjudicate those liens until after the administrative procedures have been exhausted. In this case, however, it does not, there was a final payment letter issue that they produced. It does not appear that they've asked for or are challenging that. So in those circumstances, there's nothing to adjudicate. The trial court was able to simply determine its priority and order distribution of the settlement proceeds pursuant to what Medicare, as indicated, was owed. The Illinois Department of Health Care and Family Services lien, Section 1122, allows for a party to seek a reduction in that lien. And after that procedure is completed, the statute also requires the department to pay its pro rata share of attorney's fees based upon the department's lien as it compares to the total settlement agreed upon. In this case, the court did not adjudicate the Illinois Department of Health Care and Family Services lien. It didn't consider how much of that lien is to be diminished by the attorney's fees or pro rata costs. As a result, the adjudication amount, the distribution amount may or may not be accurate with regards to them because the court didn't undertake those necessary steps. The health care services lien, I've already pointed out, they included all the lien holders and subrogation payments in that provision in the 40% distribution, which was inappropriate under the act. And so that lien, the liens held by Heron Hospital and Williams County Ambulance were not properly adjudicated by the court. The attorney lien, the attorney is allowed to recover 30% of the settlement under the health care services lien act and the attorney lien act. But in this case, the trial court allowed the attorney to recover 30% plus the cost, which he ordered, which the court ordered the Williams County Ambulance and Heron Hospital to pay. So the attorney lien was also not properly adjudicated because the 30% is inclusive of costs under the attorney lien act and the case of Carlson v. Powers. Finally, the Health Springs Life and Health Insurance Company, once again, as I pointed out, there's a dispute as to exactly what the nature is of that lien. It's our position that the evidence establishes that it's a subrogation claim. And as a result, Section 50 needs to be looked at to determine the full amount of the plaintiff's claim, the amount of comparative fault of the plaintiff, any, whether the full value of the claim is diminished. If the court finds that it's diminished, then it has to diminish the lien to the same extent. And then it also provides for attorney's fees and prorated share of costs to be awarded to subrogation claimants, which the court did not do. So it's our position that the court did not properly adjudicate the liens held by either the Illinois Department of Health Care and Family Services, Southern Illinois Hospital Services, the attorney, or the Health Care Spring Life and Health Insurance Company. And those matters have to be properly adjudicated before the order distributing those proceeds can be, an order distributing the settlement can be made. The final issue is the priority of liens. And in reviewing the briefs, I believe that we are in agreement with regards to the priority of liens. Those liens would be the Medicare lien comes first, then the attorney, Illinois Department of Health and Health Care and Family Services, Southern Illinois Hospital Services, and Williams County, the Health Care Services Department, and the plaintiff. The only place we disagree with regards to the priority of liens is the Health Spring Life and Health Insurance Company lien. It is our position that as a subrogation claim, it is last in priority just above the plaintiff. Is it in your position that there is nothing in the record that is going to support that that was affiliated with Medicare Part D? Your Honor, in my review of the record, I did not see anything that indicated that Health Care Springs Life Insurance Life and Health Insurance Company was a Medicare Part D claim. I'm not saying, Your Honor, that I missed some fine print, and if you find it, I would have reason to dispute it. But my memory and my review of the record on appeal indicated that there was nothing that indicated no evidence to establish it as Medicare Part D. I will concede that if it is Medicare Part D, then it has the same priority as Medicare. It gets moved to the top of the list because it is also covered. If it is a Medicare Part D claim, it is covered by the Medicare Secondary Care Act, and I've conceded that in my plea, in my briefs. But unless there's evidence to establish it as a Medicare Part D claim, then it's nothing more than a subrogation claim of a private insurer against a person who paid premiums for the coverage, and it falls in priority just above the plaintiff. So we would ask, Your Honor, that you reverse the trial court's order and find that the liens and subrogation rights held by Medicare, Health Spring Life, and Health Insurance Company, Illinois Department of Health Care and Family Services are not paid out of the portion of the settlement statutorily allocated to the lien holders under the Health Care Services Lien Act, that you reverse the trial court's order requiring the Health Care Services Lien Act holders, lien holders, to pay the plaintiff's cost of litigation, that you hold the court as to properly adjudicate the lien held by Illinois Department of Health Care and Family Services under the Illinois Public Aid Code, the lien held by SIH and the ambulance service under the Health Care Services Lien Act, the lien held by the attorney, and hold that the claim asserted by Health Spring Life and Health Insurance Company is a subrogation claim and is to be adjudicated pursuant to the Health Care Services Lien Act, and that the trial court, after properly adjudicating all the liens, distribute the settlement of proceeds pursuant to the following priority, Medicare, the attorney, Illinois Department of Health Care and Family Services, Southern Illinois Hospital Services, Heron Hospital, Williamson County Ambulance, Health Spring Life and Health Insurance Company, and the remainder to the plaintiff. Thank you, Your Honor. Thank you. Thank you, Counsel. Counsel? May it please the Court, Mr. Johnson? Your Honors, we are here concerning a statute that, from its conception, had holes in it. It was enacted and took effect in 2003. From that conception, practicing attorneys have questioned, what do you do about costs? What do you do about segregation and reimbursement rights? There's also other questions that I'm not going to go into because they're not relevant to this case. First of all, let me tell you, whatever it takes on my part to say that that's what I want. I don't want that to be an issue in this court. The issue here is whether you do about segregation and reimbursement rights, and in this case, particularly Medicare and Medicaid. Medicare and Medicaid have to be a portion of this statute, a portion of this whole act. It's my position that it's included in the 40% that goes to providers. Originally, the act did not have anything about segregation and reimbursement rights. The amendment took effect in 2013. That's Section 2350 that Ms. Jones has alluded to. This amendment, admittedly, I think, is poorly written. It does not specifically answer all questions. The real question is where does segregation and reimbursement rights lay in the grand scheme of things according to this Health Services Lean Act? First, it's my position that Medicare and Medicaid are segregation and reimbursement rights, and they are also leans because they're statutory, they're created, they're obligations that we must honor, and they have priority, and I think that's conceded. I will reply right now to the one question about Part D, and I'm sorry I don't see it in what I have in front of me, but I did submit a letter to the trial court as an exhibit from the insurance company, and it is a private insurance company, but those of us who are on Medicare, I'm not suggesting anybody here is, but this one is, and we all know that Part D supplement for medicine comes from private insurance companies. Now, that is established and this federal statute makes Part D, as Ms. Jones admits, a priority under Medicare. Why should this be part of the 40%? That is a real issue. Like I say, this subrogation statute, reimbursement statute, just has a lot of questions. There's more than this issue, and I deal with this quite a bit as Ms. Jones does for SIH. The honors, it's only, well, I would say reimbursement rights should be a part of the 40% paid for providers. The logic is that they pay providers to get to the status of being either Medicare or Medicaid. The fact that SIH through Herron Hospital didn't bill Medicare in this case should not make a difference. They are all one part of the same. Every time Medicare pays, they're paying a provider, someone who would be entitled to submit a lien under the Act. When this Act was modified, they did not change Section 2310, which is the part that talks about the 40%. They did not change any wording to say, yeah, we include subrogation and reimbursement rights. But remember, 2350, the entire Act, it has to fit in. The question is, does the plaintiff pay Medicare and Medicaid out of plaintiff's 30% or is Medicare and Medicaid included in the 40% for providers? That's a simple question. It's not simple, I admit. The statute under 2310, the existing part that's been there for since 2003, talks about the total amount of liens under this Act. Ms. Jones quoted that section and indicates it's repeated. Yes. What is Medicare and Medicaid other than a lien? Medicare and Medicaid, are they under the Act? They have to be. They have to fit in. I submit that they are a lien that has to be satisfied. And therefore, that same sentence that I just read from, the total amount of all liens under this Act shall not exceed 40%. That's the 40% that we're talking about. The legislature could have done us a real service, but they didn't, as many times happens. This needs to be determined. We need a resolution. I run into these problems all the time as does SIH. In the last two years, I think I have done more lien adjudications than I've done in the rest of my career. We have problems. There is not enough insurance. $20,000 does not go very far for a minimum amount of insurance. I know that's not your problem. It's the legislature, but they don't seem to listen. $50,000 is not enough anymore. Medical costs, case after case, if it's $20,000, we give it and we adjudicate. There are problems in that when we take cases, we try to make an initial evaluation. We make that initial evaluation, we're not always right. Things come up during discovery, during depositions. We find that our client had prior problems. We find that there's a question of liability. There's all kinds of issues that come up. What I'm getting at is we take cases and try to represent people that need to be represented. We get into them and then we have this issue of lien adjudication. If we settle for a small amount, there's reasons for it. If we get the policy, $20,000, there are reasons for it. We look at a situation when we're ready to settle and say, okay, what are you going to give the plaintiff? If the plaintiff is going to give 30% and nothing taken out, then we can say 30% is X number of dollars. In this case, it was $4,800. If we have a question, if there's going to be subrogation rights and Medicare and Medicaid taken out of the plaintiff's share, there's many times that there's not enough money in the 30% to pay them. Does that money come out of the providers or does it come out of the attorneys? So far, in our cases, it's come out of the attorneys. That's the way we handle it. It creates problems for us. What do we do in that situation? What do we do in those situations where there is not enough to give the plaintiff anything? We tell the plaintiff, okay, you've got to settle this for this amount, but you're not going to get anything. That doesn't go very far. We might as well dismiss the case. Well, if we dismiss the case, the providers don't get anything either. That's not good. What do we do to take the trial? If the policy limits are $20,000, you don't take them to trial. If the case has got problems, chances are you might get less than what the settlement amount is, and plus you've incurred tons of additional expenses. There are all kinds of issues that arise just because of the subrogation and the reimbursement statute and where it fits. If we can't guarantee the plaintiff 30%, then we have problems. I know that the statute doesn't say, hey, this is a settlement statute, but it does make reference to settlements, by the way. It talks about that. But that is part of the grand scheme that has to be considered. And my position to this Court is that the logical and best way to continue to proceed under this Act is to require that the subrogation and reimbursement rights come out of the 40%. We are specifically talking in this case about Medicare and Medicaid. I think that Medicare and Medicaid makes it even stronger, makes it even more poignant that that's the way it should be. I know probably that you can't just say that all subrogation rights should come out of the 40% because this case is limited. I wish there were some subrogation rights here so we could get to the whole thing. But we, as practicing attorneys, and I think Ms. Jones will concede this, we need guidance from this Court. We need to know what we're going to look at when cases get ready to settle because if we can't tell the plaintiff what they're going to get, we have problems in settlements. That's what I've got to say. Thank you, Counsel. Counsel? Your Honor, I'd like to start with the proposition that Medicare and Medicaid is somehow a subrogation claim that falls under Section 50. It's not. Section 50 talks about claim the right of other reimbursement claim that arises out of the payment. With respect to a claim for personal injuries, and then it then goes on and allows for the adjudication of those liens. Medicare can't be adjudicated by the trial courts. It doesn't even fall under the statute. It's controlled by the Medicare Secondary Care Act that in itself has provisions with regards to the reduction of a Medicare lien. The federal statute preempts any state statute that would be applicable, including Section 50. So it's not a subrogation claim under Section 50. Same with the Illinois Department of Health Care and Family Services lien, which is Medicaid and public aid. There is a separate statutory provision in Illinois that is more specific to those types of liens, liens held by the Department. And so it is not a lien held under 50 because once again, Section 50 has a detailed description of how those liens can be adjudicated, which is in conflict, direct conflict, with the Illinois public aid. And when you have two statutes that are in direct conflict, the one that is more specific controls, and that is the Illinois Department of Public Aid. So first of all, the idea that those two liens can even fall under 50, Section 50 and the Health Care Services Lien Act, is inaccurate. Second of all, even if it did, they did fall under those, that lien, that section, they still would not be included in the 40 percent. Because the section that allows for the 40 percent allocation, which is Section 10, specifically allows those, only those holding liens under this act, liens under this act. Section 50 doesn't create a lien right. It just acknowledges that there might be contractual relationships that, for which they have a lien, or have a claim, not a lien, but a claim. And in fact, Section 50 specifically states that the, does not apply to any holder of a lien under that, this act, i.e. the hospitals, the health care service providers, the health care professionals. So Section, and as pointed out by counsel, when Section 50 was enacted, Section 10 wasn't amended. So the legislative intent was not to include subrogation claims. What Section 50 does is allow a claim to reduce the amount of the subrogation claim to account for the reason why the settlement might be lower. You know, there might be comparative fault. There might be limited settlement funds. So the court has authority now under Section 50 to take those things into consideration and reduce that lien, or release that settlement claim. And the argument that is, is it logical that the health care services liens should be included in the 40 and not the subrogation claims, yes. And that's because there is a distinction, and the Supreme Court has made that distinction. The Health Care Services Lien Act establishes a right of an individual in a debtor-creditor relationship. Without the lien, they have no right to go after the settlement without a separate lawsuit. What the legislature did was create a lien that allows a debtor, or a creditor, to go after a debtor without a separate lawsuit to recover money that the plaintiff has already recovered for the medical expenses that were incurred, that were provided by the medical provider who asserts the lien, who's entitled to be paid. Whereas the subrogation claims are just that, subrogation. They pay someone else, a medical provider, a health insurance company, or have rights under Medicare to receive these benefits. And only if they recover do those entities have a right to recover. So there is a distinction, but logic aside, your honors, there's a lot of arguments that have been made by public policy. And yes, we would all be benefited by the legislature taking some action and providing some clarity. But that is the legislature's function, not the court's. The statute is clear and unambiguous. And if the statute is to be amended to include subrogation claims or Medicare or Medicare or anyone else in the 40% allocation, that has to come from the legislature, not the courts. The Supreme Court has said it's not for the courts to pass upon what the laws ought to be, but to declare what they are. Thank you, your honors. Thank you, counsel. We appreciate the briefs and arguments of all counsel. We'll take this matter under advisement. Thank you.